T.A.PEEL, ADMR.OF A.E. PEEL, :  NO. 8,319

versus :  COURT OF APPEAL

VICLA ST. ANN PEEL :  PARISH OF ORLEANS

WILLIAM A.BELL,JUDGE:

27/22

8219

BY: WILLIAM A. BELL, JUDGE:

On May 17. 1919, Albert L. Peel of New Orleans was killed at #936 Canal St. His brother, William A. Peel, who qualified as administrator of his estate, has brought these proceedings against Mrs. Viola St. Ann, divorced wife of Richard Maroney, also known as second wife of Albert L. Peel, To the same proceeding, Dudley Duplantier is made a co-defendant. The petitioner seeks to recover from these defendants, a certain Studebaker five seated, six cylinder, touring car, 1919 model, with motor number 64950, serial number, 238113. It is alleged that this car, with other property, the nature of which need not be discussed in this appeal, is property belonging to the estate of the deceased, Albert L. Peel, and that neither of the defendants has any right title or ownership therein. It is alleged that Viola St. Ann, immediately after the death of the aforesaid decedent, unlawfully took possession of the said car, and subsequently transferred it, without any right so to do, to Dudley Duplantier, who now, contrary to law, and against any rights of possession, continues to retain possession and control over said car, against petitioner's demand made on behalf of the succession of which he is administrator. It is alleged that the car in question was acquired by the decedent during his marriage with Mrs. Jennie Blanchard, his divorced wife, and that said property was community property of said marriage, against which, by order of court in divorce proceedings of Mrs. Jennie Blanchard against her said husband, Albert L. Peel, there was an injunction prohibiting the deceased from selling or disposing of said car to the prejudice of the community formerly existing between the parties to said divorce proceedings. Upon alle-

gations of fear that the car in question would be disposed of to the prejudice of the estate of Albert L. Peel, the same was sequestered in the hands of Dudley Duplantier, under order of court, on the 21st day of July, 1919. Upon the following day, on motion of Dudley Duplantier, and upon a bond being furnished by him in the sum of $1,000, the writ of sequestration was bonded and the car released by the sheriff unto the defendant, Dudley Duplantier, in whose possession the car has at all times remained during the pendancy of this proceeding.

It appears that almost immediately after the final decree of divorce granted Mrs. Jennie Blanchard against her husband, Albert L. Peel, that the latter was married to Mrs. Viola St. Ann, the other defendant herein, the marriage taking place on the 15th of April, 1919. It is claimed by Viola St. Ann in her answer to these proceedings, that the car in question was given her by the deceased about three weeks before her marriage to him, that is, the latter part of March, 1919. At the trial of the case, this defendant testifies that her name "Viola Peel," was cut upon the steering wheel of the car; that this inscription was made about a week before her marriage to the decedent, but upon cross-examination, she says that the car was given to her about three weeks before her marriage, and that the letters, or inscription were not on the wheel when given her, and she finally admits, on cross-examination, that she does not know who placed the lettering on the steering-wheel. There is no proof in the record of any formal transfer of this property to Viola St. Ann, nor that anyone was a witness to the act of donation, as claimed by her. On the contrary, it is shown that during the negotiations towards adjustment of the community interest between the decedent and his wife, duly divorced from him, that the said Albert L. Peel wrote a letter

378

to his attorney under date of April 29, 1919, (some fourteen days after his marriage to Viola St. Ann) and particularly referred to said car, as property forming part of the community previously existing between him and his first wife, and concerning which a judgment for partition had been rendered in the said divorce proceedings. A careful examination of the testimony relating to the relations between the decedent and Viola St. Ann, in regard to this property, is convincing, that she never had any interest or title in the same whatsoever.

It remains, under the circumstances, to determine the rights, if any, that Dudley Duplantier, the other defendant in this proceeding, had in the car herein sequestered. Duplantier has called one, Omer Vilac, in warranty into this proceeding, alleging that Vilac sold him the Studebaker car on or about June 4, 1919. This defendant-in-warranty has pleaded in effect, a general denial to the plaintiff's petition as well as to Duplantier's answer and call in warranty. The testimony in regard to this transaction shows that Omer Vilac, through his son, Fabian Vilac, a young boy of but twenty-two years of age, doing odd jobs around his father's blacksmith shop, and acting for his father, purchased from Viola St. Ann, the car in question, by paying $800 in cash therefor, to Louis F. Burns, Esq., then acting as lawyer or agent for Viola St. Ann. There was no formal bill of sale, but simply a receipt for the money, signed by Burns, only, and describing by number the particular Studebaker car. Omer Vilac, having learned from his son that this car could be bought for $800, was doubtful whether he, himself, would buy it for the price mentioned, or whether he should buy it and transfer the same to his next-door neighbor and friend, Fred Roses, the latter being engaged in the business of purchasing all kinds of personal property upon which he could find opportunity for profitable trading. Omer Vilac, the night previous to the sale of the

automobile to Duplantier, persuaded Fred Roses to purchase the machine for the price of $850, and the latter accordingly gave Vilac his check payable to Vilac's order for said amount. On the following day, after advising a friend who knew the machine, of his proposed purchase, Roses concluded, upon the friend's advice, that he did not want the machine, and at the noon hour of the same day, so informed Omer Vilac, who had meanwhile purchased the machine from Viola St. Ann, through his son, Fabian Vilac. Roses' check having been indorsed by Vilac and cashed by his son through a third party, the son retained $50 of the $850 for his commission in the matter, and payed the balance to Viola St. Ann's attorney, as aforesaid. At this point Duplantier came into the transaction, by learning that Roses, who was his uncle, had declined the purchase of the car, and substituted himself in his uncle's place. The car was thus sold and delivered to him instead of to his uncle, Fred Roses, he, (Duplantier) on the next day reimbursing his uncle for the $850 represented by the check given by Roses to Omer Vilac. Young Vilac denies that his father ever purchased the car, and that his transactions with Viola St. Ann through her attorney were entirely on his (Fabian Vilac's) own account. However, neither the father, nor son, when closely interrogated concerning the circuitous sale by Viola St. Ann, through Fabian Vilac to Duplantier, a purchaser substituted in Roses' place, who originally issued the check for $850 to Omer Vilac, can satisfactorily explain why the said check was made payable to Omer Vilac. This fact, coupled with the second transaction which involved the issuance of a check for $15.00 by Duplantier to Omer Vilac, as additional compensation or commission connected with this sale, and further, Omer Vilac's unsatisfactory

explanation concerning the cashing of this check, form such
record evidence as impe_ us to the belief that Omer Vilac was
undoubtedly the real purchaser of the Studebaker car from
Viola St. Ann, and unquestionably was the only party from
whom Duplantier, in turn, acquired the car.

There is nothing dubious or suspicious in the
conduct of Duplantier, who appears from a most careful ex-
amination of the extensive testimony in this case, to have
been a careless but honest purchaser for value who relied upon
his many years' confidence in Omer Vilac to lull him into the
belief - without a business-like inquiry - that Vilac's title
in the car was reliable and translative. It is quite possible
that Vilac in turn believed he was purchasing the car from its
true owner.

Our brother of the Trial Court, who heard and
saw the innumerable witnesses in this case, was undoubtedly
convinced, as are we, that Viola St. Ann at no time had valid
title to the car conveyed by her to Omer Vilac, and it follows
that Omer Vilac who purchased from one a perfect stranger to
him, without caution or satisfactory inquiry as to her title,
must be found liable in warranty to his vendor, who is in
turn, liable to the estate of the true and valid owner.

It is contended by Counsel for Vilac that
plaintiff, as administrator, cannot stand in judgment, and is
without authority to institute a proceeding of this nature,
there being no allegation or proof that there are debts of the
succession to be paid, and that in fact the estate is shown
to be amply solvent, and that all debts having been paid, the
administrator's sole duty is to promptly close the estate and
turn same over to the rightful heirs.

No such exception or plea has been filed by
Vilac, who now clings to the exception of no cause of action
herein filed by his vendee, Duplantier, and urges that Duplantier's
defense by way of exception should be maintained to his bene-
fit. Were the exception available to Vilac though only pleaded

by Duplantier, we are of the opinion that it is not a sound defense for either. The authorities cited by counsel are not applicable as have been plainly shown by the clear and well considered case: Woodward, Admr. vs. Thomas et als., 38 Ann. 239 - where the Court pointed out that though an estate be solvent it was the duty of an administrator, the heirs not yet being in possession, and the affairs of the succession being unsettled, to reclaim such property as he may have discovered belonging to the estate, held adversely by a third party under-title not derived from the decedent. In this decision many of the authorities cited by Counsel for Vilac were reviewed and differentia ted from the facts of the case then under discussion, and which are in many respects similar to the facts now before us. La. Digest, Vol. III., Par. 67 and Par.83. It has also been held that an administrator may sue for debts due the estate as long as he continues to be administrator, notwithstanding the fact that the succession itself owes no debts - Keane vs Goldsmith, 14 Ann. 349; Kluker vs Kent, 27 Ann. 37; Labit vs Perry, 28 Ann. 591.

It is also contended by Vilac that the administrator in any event cannot have judgment for the whole auto for the reason that if it belonged to the first community existing between decedent and Mrs. Jennie Blanchard Peel (the first wife, now divorced) the effect of the divorce was to dissolve the community and therefore Mrs. Jennie Blanchard Peel's half interest cannot be now claimed in these proceedings by plaintiff herein, who is without authority to represent her. It is further claimed that the heirs of the decedent should have been joined in this proceeding. There is no merit in these contentions, all of which were, in our opinion, rightly disregarded by the trial court. In any event the defendant in warranty cannot now be heard to urge these defenses in argument or brief only. It may be added that whatever rights the decedent's first wife had or may have had in the partition, or the results of partition ordered to be taken in her divorce

382

proceedings, are matters of either amicable or legal adjustment between herself and her divorced husband's administrator, and are not grounds or pleas of defense available to one called in warranty to restore the whole of which his vendee has been evicted. It is true that Code of Practice, Art. 384, gives to a warrantor the right to plead every exception which the defendant calling him might plead, but such exceptions, when adopted or resorted to by warrantor, must be by himself specially pleaded, and not urged simply in argument or brief.

It is further contended by counsel for Vilac that should this warrantor be found liable to Duplantier, there should be judgment reserving to Vilac the right to retain against the whole price originally paid by Duplantier, such amounts as would cover the impairment to the car arising from the latter's use thereof for almost three years since the institution of this suit. He cites with confidence Art. 2508 R.C.C., which provides as follows:

> "If, however, the thing sold was impaired by the buyer and he has reaped some benefit therefrom, the seller has a right to retain, on the price, the amount to which such damages may be estimated in favor of the owner who evicts him."

This article of the Code, replete with equity, cannot be invoked or applied to conditions arising subsequent to the suit for eviction, or subsequent to the call in warranty. Adjustment of claims between the parties, in such manner as is pointed out by the above Article, is only possible as to the status of the parties and condition of the property at the time of the suit. If it were otherwise, there would be additional and amendatory decrees up to the final termination of controversy in the court of highest and final jurisdiction.

There is ample proof in the record to justify the conclusions of the trial judge that the value of the Studebaker Car involved herein, is Eight Hundred Dollars, and we can find no error in the decree directing that defen-

dants restore the car unto plaintiff in such condition as existed at the date of its sequestration, or failing therein, there be judgment in the amount aforesaid. As provided by Art. 565 of the Code of Practice, the judgment should be executory on the part of the plaintiff against the defendants and on the part of the defendant, Duplantier, against the warrantor, Omer Vilac, the latter being compelled to pay unto Dudley Duplantier the sum Eight Hundred Dollars, with legal interest and costs as stipulated in said judgment conditioned, however, upon the said Dudley Duplantier first restoring to plaintiff the car as directed and payment of all costs herein which plaintiff has incurred or upon payment by said Duplantier, unto plaintiff, of the monied judgment with interest and costs.

It is therefore ordered, adjudged and decreed, that the judgment of the trial court as appealed from, be amended only in so far as to direct that Omer Vilac shall be, and he hereby is, condemned to pay unto Dudley Duplantier the sum of Eight Hundred Dollars, with legal interest from judicial demand and all costs of both courts, conditioned upon the full compliance by Dudley Duplantier of the alternative judgment for which he, as defendant, in solido, has been cast, in favor of plaintiff, William A. Peel, Administrator of the Succession of Albert L. Peel.

JUDGMENT AMENDED

AND AS AMENDED - AFFIRMED